**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff/Respondent,** | ) | **Criminal Action No.** |
| | ) | **5:22-cr-00077-SCM-MAS** |
| **v.** | ) | **and** |
| | ) | **Civil Action No.** |
| **JAMES GARFIELD CHARLES,** | ) | **5:26-cv-00140-SCM-MAS** |
| | ) | |
| **Defendant/Movant.** | ) | |
| | ) | |

**REPORT & RECOMMENDATION**

This matter is before the undersigned on Petitioner James Garfield Charles' ("Charles") Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. § 2255. Charles asserts seven grounds for relief, including several claims for ineffective assistance of counsel. [DE 191, 193].[1] The United States responded contesting each of these grounds. [DE 202]. Considering the record before the Court, the undersigned recommends Charles' motion be denied for the reasons stated below.

[1] Charles' original petition far exceeded the page limit permitted by the local rules. [DE 191]. The Court instructed Charles to submit an amended memorandum in support of his petition [DE 192], which became the controlling document in the case [DE 193]. When Charles filed his reply in support of his petition [DE 204], Charles again submitted a filing that far exceeded the page limits set by local rules. The Court struck the reply per a motion from the United States [DE 207], and Charles filed a reply that complied with the local rules [DE 208]. The Court's analysis of Charles' arguments are based upon his amended petition [DE 193] and his later reply [DE 208].

## I. RELEVANT FACTUAL BACKGROUND

On July 1, 2021, a federal grand jury indicted Charles on a number of drug and gun related charges. The Sixth Circuit summarized the extensive factual background that led to these charges. [DE 164-1]. In summary, Charles was one of many individuals involved in selling large volumes of methamphetamine and cocaine to a confidential informant, Zane Sloan. Two other members of this conspiracy included Vincent Vassor and Tony Cloyd.

> During this period, Vassor was living in Los Angeles but commuted to Kentucky, residing in Lexington—ostensibly at Charles's home—for up to a month at a time. Sloan purchased drugs, including "cocaine and pills and different things," from Vassor "five or six times," mostly methamphetamine and "a little bit of heroin," approximately an "eight ball and maybe a quarter-ounce," for a total of approximately four to six pounds.
>
> When Sloan ordered drugs from Vassor, Charles sometimes delivered them. Sloan also ordered drugs from Charles, initially through Cloyd, but later by contacting Vassor. Toward "the end" of the investigation period, however, Sloan called Charles directly to arrange drug transactions. According to Sloan, Charles, Vassor, and Cloyd became his exclusive sources for methamphetamine from October through December 2020. Cloyd testified that he "[n]ever" obtained drugs from Vassor, and "really didn't know [Vassor] to be involved in any of it," nor did he know where Vassor lived. Cloyd and Sloan never discussed Vassor.
>
> Some of the transactions with Sloan involved guns. Sloan transferred guns to Vassor "two or three times," ranging from between one to "five, maybe six" guns in exchange for methamphetamine or money, for a total of "probably six, seven, [or] eight" guns. He sold Charles "one gun, maybe two."
>
> From October through December 2020, Richmond Police conducted controlled buys of methamphetamine from Sloan, resulting in his arrest on New Year's Eve. Police also searched his home, seizing "14 ounces" of methamphetamine, a "gram of heroin," and a pound of marijuana that, according to Sloan, all came from Vassor. After his arrest, Sloan

> agreed to cooperate with law enforcement and help them identify drug suppliers "[u]p the chain."
>
> While serving as an informant, in January 2021, Sloan contacted Cloyd looking for methamphetamine. Cloyd had never dealt methamphetamine, but he "called around" looking on Sloan's behalf. Cloyd eventually reached Robert Solomon, who "got ahold" of the drugs and met Cloyd, Charles, and Sloan to sell the latter "four to five pounds" of methamphetamine. Though Cloyd did not know from whom Solomon got the methamphetamine, Cloyd "assume[d] it came from [Charles]," but "never asked any questions." Cloyd obtained methamphetamine from Charles and sold it to Sloan an additional "time or two." In total, Cloyd called Charles to obtain drugs "[f]our to five" times, buying up to a pound each time. Sometimes Cloyd paid for the drugs on receipt, other times, Charles "front[ed]" the drugs to him, and Cloyd paid him later.
>
> On January 7 and January 14, 2021, Sloan conducted two controlled buys from Cloyd that were supplied by Charles. A third controlled buy took place on February 8, when Vassor sold Sloan a pound of methamphetamine in a Target parking lot. Sloan secretly recorded the buy. The video shows Vassor agreeing to "run to" Charles's house to "grab" a pound of methamphetamine. A second video shows Sloan handing Vassor money for the methamphetamine and discussing the payment Sloan owed Vassor for prior transactions.
>
> Sloan arranged for a final controlled buy of three pounds of methamphetamine from Charles on June 8. That morning, law enforcement conducted surveillance of Charles's home, and when he left, police pulled Charles over on Richmond Road. Officers seized the three pounds of methamphetamine from the backseat of his car.
>
> That same day, police executed a search warrant for Charles's home, where they discovered almost $25,000 in cash, four pounds of methamphetamine, 200 grams of heroin, and 200 grams of cocaine, all of which (according to DEA Task Force Officer and Narcotics Detective Keith Parke) was worth between $70,000 to $75,000. Officers also found digital scales, baggies containing narcotics, ammunition, and 14 firearms.

[DE 166-1, Page ID# 1503-05 (footnote omitted)].

Cloyd pleaded guilty, but Charles and Vassor took the case to trial. After a three-day trial, Charles was convicted [DE 82] and sentenced to 380 months of imprisonment with supervision to follow [DE 104].

Charles appealed the decision to the Sixth Circuit, but the appeals court affirmed the judgment. [DE 164-1]. Charles then filed a petition for writ of certiorari with the Supreme Court, but his request was denied. [DE 174].

Charles then timely filed this habeas petition. [DE 191].

## II. ANALYSIS

Charles has asserted seven grounds for habeas relief, all contending his counsel was ineffective in his assistance defending Charles. The Court will initially describe the legal standard for ineffective assistance of counsel before addressing each of Charles' seven grounds for relief.

### A. LEGAL STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Under § 2255, a federal prisoner may obtain relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). A constitutional basis for § 2255 relief requires "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson*

*v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Any non-constitutional error must constitute a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990). A § 2255 movant typically must prove any factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*).

One class of alleged constitutional error is ineffective assistance of counsel in violation of the Sixth Amendment. The standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims. To prevail, a movant must prove (1) that defense counsel's performance was deficient, and (2) that the demonstrated deficiency prejudiced the movant. *Id*. at 687. To establish deficient performance, a movant must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687–88. "Judicial scrutiny of counsel's performance must be highly deferential", and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. A prejudice showing requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different." *Id*. at 694–95. The Court "must consider the totality of the evidence" in assessing prejudice. *Id*. at 695. To satisfy the prejudice prong "[i]n a guilty plea context 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going

to trial.'" *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The movant must satisfy both prongs of the *Strickland* analysis, but courts need "not address both components of the deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Id*. at 730; *Strickland*, 466 U.S. at 697.

## B. <u>GROUND 1: PRETRIAL INVESTIGATION</u>

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome." *United States v. Hassan*, Nos. 12-cr-20523, 2014 WL 5361942, at *5 (E.D. Mich. Oct. 21, 2014) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). When determining counsel's effectiveness in investigating a case, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." However, "[c]ounsel cannot be expected to investigate a defense or a witness unknown to him." "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up[.]" *Poole v. MacLaren*, 547 Fed. App'x 749, 755 (6th Cir. 2013) (citations omitted).

During the pendency of his case, Charles had two attorneys, Tom Lyons and Andrew Sparks. Lyons handled the case initially while Sparks was substituted as counsel approximately a month before the start of the trial. Per Charles, "counsel failed to develop an independent defense theory, failed to adequately investigate the factual basis for the charges, and failed to obtain and use available evidence that could have undercut the Government's proof." [DE 193, Page ID# 1979].

Yet, Charles never provides any specifics in support of this claim. If Charles believed there was a basis to challenge a search warrant as a violation of his Fourth Amendment rights, Charles needs much more than conclusions. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). If Charles believes his counsel should have interviewed or called a witness at trial, he must "'[a]t the very least . . . submit sworn affidavits from each of the individuals he has identified as uncalled witnesses stating whether they were in fact available to appear at trial and able to give testimony favorable to [the] defense.'" *United States v. Tilghman*, No. 07-cr-138-KSF, 2013 WL 4735578, at *10 (E.D. Ky. Sept. 3, 2013) (quoting *Talley v. United States*, No. 1:00-cv-74, 2006 WL 3422997, at *10 (E.D. Tenn. Nov. 27, 2006)). "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("Under whatever framework, however, evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.").

Defendants often wish that their trial counsel could have found more evidence or advanced more arguments that would have inured in their favor, but wishing does

not mean that evidence or argument exist. Without substantially more information, the Court simply cannot conduct the needed analysis under *Strickland's* two-prong approach. *See Lovejoy v. United States*, No. 95-3968, 1996 WL 331050, at *3 (6th Cir. June 13, 1996) (acknowledging that conclusory statements are insufficient to warrant habeas relief).

### C. <u>GROUND 2: ADVICE REGARDING CHARGES, TRIAL RISKS, AVAILABLE DEFENSES, AND SENTENCING EXPOSURE</u>

For his next argument, Charles contends that "[c]ompetent counsel had a duty to ensure that Mr. Charles understood that exposure before trial and had a realistic understanding of how the Government's proof, the Guidelines, and the § 924(c) count affected his risk." [DE 193, Page ID# 1981]. He explains, that a "rational defendant evaluating trial risk would need to understand not only the base drug counts, but the mandatory consecutive effect of § 924(c), the guideline exposure, and the likelihood that drug quantity findings would drive the sentencing range." [DE 193, Page ID# 1981]. From this, the Court will assume that Charles is arguing that his counsel failed to provide such information to him. However, not only are his arguments vague and conclusory like with Ground 1, but the record rejects this argument.

First, as already noted, where a petitioner has not provided any detail to support or even comprehend his claims, those claims should be dismissed. *See Johnson v. United States*, 457 Fed. App'x 462, 466-67 (6th Cir. 2012). *See also Short v. United States*, 504 F.3d 63, 65 (6th Cir. 1974) (affirming denial of a § 2255 motion because petitioner's claims "were stated in the form of conclusions without any allegations of facts in support thereof, as well as being unsupported by proof or

reference to such proof."). Here, Charles broadly states that his trial counsel did not provide him with information about the charges or risks, but he never describes what did or did not happen here. Were plea offers made and rejected? Was there a discussion about going to trial? What was said, if anything, about the charges, the possible sentence, and the risks of trial? What aspect of the charges or risk did he not understand or appreciate? What alternative decision would he have made meaning what is the prejudice of his lack of information? Charles never explains any of this.

Second, Charles was repeatedly informed of the charges against him and the possible penalties multiple times during his case at his initial appearance and arraignments on the Indictment and Superseding Indictment. [DE 4, 22, 70]. At those hearings, not only did the Court discuss possible penalties, but the Court also discussed the enhancement for those penalties. Moreover, those are listed in the charging documents, including the consecutive nature of the penalty for the § 924(c) charge.

Ultimately, even if the Court were to take Charles' unsupported allegations as true, Charles has not provided any evidence of prejudice. The Court cannot assume prejudice; Charles must provide an exacting explanation of how things would have gone differently. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (stating that proving prejudice under *Strickland* involves an "exacting standard" of showing that, but for counsel's failure, there is a reasonable probability that the outcome would have been different). Is Charles suggesting he would have pleaded guilty or accepted

a plea offer? Is Charles suggesting the outcome of the trial would have changed? Charles never answers any of these questions meaning the Court lacks an ability to make any finding of prejudice. Without such, Charles fails to meet *Strickland's* necessary standards.

**D. GROUND 3: SUFFICIENCY OF THE EVIDENCE**

In his third ground, Charles challenges whether the United States presented sufficient evidence to establish a specific nexus between the firearms at issue in the § 924(c) charge and the drug trafficking offense. [DE 193, Page ID# 1982-83]. While clearly rehashing the merits of the case, Charles masks the argument as a claim that his counsel was ineffective for failing to challenge the government's evidence in this regard. "Counsel should have pressed the Court through Rule 29, requested precise jury instructions, objected to any argument that collapsed 'presence' into 'furtherance,' and preserved the issue for appeal." [DE 193, Page ID# 1983].

First, to the extent Charles is arguing his counsel was ineffective, the record establishes that his trial counsel contested this very issue via the means Charles now seeks to complain about. On the second day of trial, counsel made a motion under Rule 29 challenging, among other things, that there is no connection between the drug conspiracy and the § 924(c) charge. [DE 133, Page ID# 1145-46]. Moreover, the issue was preserved and thoroughly addressed by the Sixth Circuit, albeit not the outcome Charles would have liked. [DE 166-1, Page ID# 1518-20 ("because sufficient evidence existed for a jury to convict Charles of possessing a firearm in furtherance of drug trafficking, we affirm Charles's conviction."]. Simply because counsel lost the argument does not mean he was ineffective. *See Hodge v. Haeberlin*, 579 F.3d 627,

644 (6th Cir. 2009) ("Counsel does not fall below this [*Strickland*] standard by failing to prevail when arguing a debatable point to the court.").

Second, Charles never provides any detail as what he wanted counsel to have done differently other than the efforts reflected in the record. Charles describes the legal requirements for a § 924(c) in his petition, but he never suggests the alternative strategies or arguments counsel should have employed to overcome the evidence offered by the United States. Mere speculation that an unidentified or vague alternative strategy would have altered the judicial outcome is not sufficient. *Hodge*, 579 F.3d at 640 ("Hodge's speculation that his testimony would have left a favorable impression with the jury does not demonstrate the required prejudice under *Strickland*.").

Like with the prior two grounds, Charles' third ground lacks merit and should be dismissed.

### E. Ground 4: Counsel's Failure to Object to Evidence, Cross-Examine Witnesses, and Preserve Issues

Charles broadly attacks his counsel's tactics at trial in his fourth ground. "Competent counsel should have challenged the reliability, relevance, and prejudicial effect of the Government's evidence. Counsel should have used cross-examination to expose weaknesses in the Government's theory, including gaps between alleged drug conduct and firearm possession, weaknesses in surveillance interpretation, and the limits of witness knowledge." [DE 193, Page ID# 1985].

However, "[j]udicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance. . . . [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (internal citations and quotation marks omitted; alteration in original). "Strategic decisions of defense counsel are 'virtually unchallengeable.'" *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 849 (6th Cir. 2017) (quoting *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001)).

Of course, Charles' fourth ground suffers many of the same problems as his prior grounds: it lacks specificity. Charles never once identifies what acts or omissions Sparks took at trial that were ill advised. If Charles believes that his trial counsel should have taken a different tack with a witness, which witness and what questions or evidentiary issues did Charles want his trial counsel to exploit? Charles never gives the Court any guidance on the details of his argument. To satisfy both prongs of *Strickland*, Charles must provide specificity. *See Leonard*, 846 F.3d at 849; *see also Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (stating that proving prejudice under *Strickland* involves an "exacting standard" of showing that, but for counsel's failure, there is a reasonable probability that the outcome would have been different).

The Court should dismiss the fourth ground asserted by Charles.

### F. GROUND 5: FAILURE TO CHALLENGE PRESENTENCE INVESTIGATION REPORT

For his fifth ground, Charles avers that counsel was ineffective "by failing to adequately challenge the Presentence Investigation Report [("PSR")], failing to contest material guideline determinations, failing to present meaningful mitigation

evidence, and failing to object to the sentence as procedurally and substantively unreasonable." [DE 193, Page ID# 1975]. Charles attacks a couple specific issues.

First, Charles notes that while counsel objected to the drug quantity determination in the PSR, the objection was overruled. [DE 193, Page ID# 1986]. However, Charles faults counsel that he should have employed "more effective advocacy" on the issue. [DE 193, Page ID# 1986]. As this Court has already established, however, "[c]ounsel does not fall below this [*Strickland*] standard by failing to prevail when arguing a debatable point to the court." *Hodge v. Haeberlin*, 579 F.3d 627, 644 (6th Cir. 2009). The Court held an evidentiary hearing concerning the counsel's objections over the drug quantity in the PSR, permitted direct and cross-examination by counsel of the law enforcement officer involved in the investigation, and heard legal arguments from counsel. Maybe Charles is suggesting trial counsel should have argued the issue differently or taken other steps to convince the Court of his position. But Charles never provides any suggestions on what counsel should have done differently or what counsel got wrong. Regardless, there is no dispute that counsel advocated the very issue for which Charles now complains. Charles must "prove that counsel's representation was not merely below average, but rather that it 'fell below an objective standard of reasonableness.'" *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 688). Charles has not met that standard.

Second, Charles argues that counsel should have made a stronger mitigation case at sentencing. "Effective counsel should have humanized Mr. Charles,

challenged overstatement in the PSR, argued against unwarranted disparity, and preserved objections to procedural and substantive reasonableness." [DE 193, Page ID# 1987]. Once more, Charles provides no details in support of this broad accusation. Did he want counsel to call a particular witness to help humanize him? *Rayborn v. United States*, 489 Fed. App'x 871, 878 (6th Cir. 2012) ("[W]hether to call a witness and how to conduct a witness'[s] testimony are classic questions of trial strategy that merit *Strickland* deference."). How was Charles' sentence disparate from other, similar cases? What objections did trial counsel fail to make? Charles never acknowledges that counsel did humanize him and sought a below-guidelines sentence. [DE 93 (Charles Sentencing Memorandum), Page ID# 441-46]. As the Court established above, habeas relief is not warranted with such conclusory arguments.

### G. GROUND 6: APPELLATE COUNSEL FAILURES

Charles next transitions from his trial counsel to his appellate counsel to argue that the latter should have done much more. "Appellate counsel should have raised the strongest available issues, including the sufficiency of the § 924(c) evidence, trial counsel's preservation failures where [*sic*] apparent from the record, evidentiary issues, and sentencing errors tied to drug quantity and reasonableness." [DE 193, Page ID# 1987-88].

Charles' arguments fail the same two reasons that many of his prior arguments fail. First, by all accounts, Charles' appellate counsel raised these critical arguments for which he now complains. As is plain in the Sixth Circuit's opinion in this case, appellate counsel raised the issue of sufficiency of the evidence of the § 924(c) charge

and many issues tied to the sentencing of Charles. Second, as to the remaining issues, Charles provides no details from which the Court can discern a specific issue. What did trial counsel fail to preserve that appellate counsel did not raise on appeal? What are the evidentiary issues? What were the sentencing errors tied to the drug quantity beyond those already addressed? Charles does not provide the answer to any of these questions. As the Sixth Circuit has long-held, conclusory allegations will not allow the Court to provide habeas relief. *Short v. United States*, 504 F.3d 63, 65 (6th Cir. 1974) (affirming denial of a § 2255 motion because petitioner's claims "were stated in the form of conclusions without any allegations of facts in support thereof, as well as being unsupported by proof or reference to such proof.").

## H. GROUND 7 CUMULATIVE ERROR

Charles' final argument is that all the errors of his counsel described in prior grounds establish a general or cumulative error. [DE 193, Page ID# 1988-89]. "Under cumulative-error analysis, 'a defendant must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair. . . . That is so because errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone . . . may cumulatively produce a trial setting that is fundamentally unfair.'" *United States v. Warman*, 578 F.3d 320, (6th Cir. 2009) (quoting *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004)). As the Court has detailed above, there are no errors, much less a cumulative error. Charles has not once established that his counsel acted deficiently or that one of these acts led to some prejudicial effect. In other words, there is no prejudice to cumulate

into a greater harm. Thus, there is no need for the application of the cumulative error analysis.

## III. REQUEST FOR EVIDENTIARY HEARING

In his petition, Charles also seeks an evidentiary hearing. [DE 193, Page ID# 1989-90].

Rule 8 of the Rules Governing Section 2255 Proceedings requires the Court to "review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule to determine whether an evidentiary hearing is warranted." The Court must hold an evidentiary hearing on any "§ 2255 motion in which a factual dispute arises." *Howard v. United States*, 485 F. App'x 125, 128 (6th Cir. 2012) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). However, where the "record conclusively shows that the petitioner is entitled to no relief[,]"no hearing is required. *Id.*; *accord Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (emphasizing that "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact") (internal quotation marks omitted).

Considering the record and arguments presented above, the Court cannot discern any dispute of fact that exists. At no point during its analysis does the Court weigh into or counter the factual allegations provided by Charles. If anything, the Court repeatedly faults Charles for not providing more. Thus, Charles' request for an evidentiary hearing will be denied.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") shall issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473,484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

Charles has asserted seven arguments in favor granting his petition for habeas relief. First, Charles complained his counsel did not conduct enough of a pretrial investigation into the facts and circumstances surrounding the charged crimes. Second, Charles contends counsel should have better informed him of the charges and risks associated with those charges. Third, Charles challenged the sufficiency of the evidence against him. Fourth, Charles faults his trial counsel's efforts at trial to cross-examine witnesses and make necessary objections. And finally, for his trial counsel, Charles questions trial counsel's objections to the PSIR. In all these instances, Charles makes broad statements suggesting the fault of counsel and how such fault resulted in the sentence he is now serving. However, Charles never provides any specificity or detail to support these details much less how those allegations prejudiced him in these specific instances. In other words, the Court has

no way to gauge what counsel should have done differently per Charles or how that would have changed the outcome. For his sixth ground, Charles pivots to the argument that appellate counsel failed to make arguments that the record establishes he did, in fact, make on appeal. And lastly, Charles suggests that all the broad error he listed above provide a basis to find cumulative error. Considering the lack of the above arguments, the Court will decline to find cumulative error. Reasonable jurists could not debate these conclusions.

Accordingly, it is **RECOMMENDED** that a certificate of appealability be **DENIED** upon the District Court's entry of its final order in this matter.

## V. CONCLUSION

For the reasons stated herein, the Court **RECOMMENDS**:

1) The District Court **DENY**, with prejudice, Charles's Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 [DE 191]; and

2) The District Court **DENY** a certificate of appealability as to all issues, should movant request a COA.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. See also Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen days (14) after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and

Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); Thomas v. Arn, 106 S. Ct. 466 (1985).

Entered this the 5th day of August, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY